UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>   Plaintiff,<br>  v.<br>LINDA NGUYEN and GEORGE DAVID,<br>   Defendants. | Case No. 4:19-cr-0045-2 PJH<br><br>**ORDER DENYING PRETRIAL MOTIONS**<br><br>Dkt. Nos. 49, 50, 51 |
|---|---|

  Defendant George David has filed the following motions: (1) motion to quash search warrant and suppress evidence obtained during a search of co-defendant Linda Nguyen's home pursuant to a search warrant ("Mot. Suppress"); (2) motion to traverse the search warrant affidavit and for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks* Mot."); and (3) motion to disclose the identity of a confidential informant ("Mot. Disclose CI"). The matters are fully briefed, and David has waived oral argument on the motions. The court determines that the matters are suitable for decision without a hearing, and DENIES the motions for the reasons set forth below.

**I. BACKGROUND**

  The following factual summary is taken primarily from the affidavit submitted by FBI Special Agent James G. Kang in support of the search warrant application at issue. Mot. Suppress, Ex. A (SW Affidavit), dkt. no. 50-3. In November 2013, the FBI was contacted by a confidential human source ("CHS1") with information that a woman named "Thi" was involved in disability benefits fraud. CHS1 provided information to the FBI for a 14-month period from January 2014 to March 2015. CHS1 identified "Thi" as

co-defendant Linda Nguyen and reported that she worked with a medical doctor named "Dr. David." Investigators determined with database checks that "Dr. David" was defendant George David.

In March 2015, the FBI initiated a joint investigation into disability benefits fraud with the Social Security Administration Office of the Inspector General ("SSA-OIG"), which had been aware of Nguyen since 1998. The FBI and SSA-OIG coordinated with California Employment Development Department ("EDD") investigators and discovered that Nguyen facilitated fraudulent applications of non-disabled persons by assisting applicants with the administration and submission of documents to the SSA's Disability Insurance Benefits Program ("DIB") and the EDD's State Disability Insurance ("SDI") and having David provide medical examinations and reports in support of the applications. EDD records showed that David was a medical source for over 900 SDI disability applications between January 2013 and June 2017 and that Nguyen's residence was used as a mailing address for some of the applicants. Phone records indicated frequent communication between Nguyen's home phone number and David's home phone number, and FBI surveillance found that Nguyen is a regular presence at David's office.

Between March 2015 and December 2018, law enforcement conducted over 40 interviews with DIB and/or SDI recipients who had David as a medical source on their disability applications. Three interviewees in particular acknowledged Nguyen and/or David's involvement in their applications: (1) Jesse R. told investigators that he paid Nguyen to help with his SDI application and that David completed and signed the paperwork despite Jesse R. never having met David; (2) Brenda C. told investigators that she had paid a man named "Jon" $3,000 to connect her to David, that she did not meet David through Nguyen, and that she never met with David but he completed her application for SDI benefits; (3) Wayne C. told investigators that a woman named "Helen" referred him to David, that he paid Nguyen 10% of his SDI payment, that he visited Nguyen twice at her home, and that David fabricated the medical evaluation on his SDI application stating that Wayne C. suffered from PTSD from his experience in Vietnam.

On August 2, 2017, the FBI and SSA-OIG interviewed various SDI recipients, including a person later designated as a confidential human source ("CHS2") who told agents that he/she found David online, that no one introduced David to him/her, and that he/she suffered from depression. After finishing the interview, CHS2 returned later that day and recanted his/her prior statements. At his/her second interview, CHS2 told agents that Nguyen, Nguyen's relative Christopher, and David held a meeting at David's office on July 29, 2017, with a group of the SDI recipients who were going to be interviewed. Security camera footage from David's office building dated July 29, 2017, showed David and several of the SDI recipients who were interviewed on August 2, 2017, which, according to the investigators, confirmed that a meeting like the one described by CHS2 took place. CHS2 told investigators that Nguyen told the SDI recipients at the July 29, 2017, meeting, not to mention her during their August 2, 2017, interviews and to say that David worked alone. CHS2 reported that he/she had previously used Nguyen and David to file a fraudulent SDI application, and that Nguyen charged CHS2 10% of his/her expected benefits.

After his/her August 2, 2017, meeting with the FBI and SSA-OIG, CHS2 agreed to work undercover for the FBI. CHS2 called Nguyen on March 5 and 12, 2018, about obtaining SDI benefits because he/she wanted to leave his job, and met Nguyen at her home on March 13, 2018. Nguyen advised CHS2 on how to fill out the SDI application and told CHS2 that she would take 10% of the SDI benefits and that she wanted CHS2 to pay her an advance deposit in cash. On May 24, 2018, CHS2 met Nguyen at her home and gave her a $1,500 cash deposit. Nguyen told CHS2 that she would pay David from the money CHS2 paid her, and told CHS2 to attend an appointment at David's office on May 26, 2018.

On May 26, 2018, CHS2 met Nguyen at David's office and sat in the waiting room for about an hour, during which time Nguyen told CHS to sign a blank SDI application. Nguyen gave CHS2 a prescription signed by David for the antidepressant Mirtazapine and told CHS2 he/she could leave without having to see David. David did not see or

examine CHS2 at that time, but CHS2 saw David in his back office while CHS2 was in David's waiting room. On June 4, 2018, the EDD received CHS2's SDI application which was completed and signed by David, who certified that he examined CHS2 on June 2, 2018, and that CHS2 could not work due to depression. CHS2 received a notice of computation and notice of claim from the EDD on June 8, 2018, and received a voicemail from Nguyen on June 14, 2018, and subsequent phone calls, asking if CHS2 had received a notice of computation and asking CHS2 to send her a photo of it. The government has disclosed the identity of CHS2, Jhun C., to the defense.

Investigators reviewed Nguyen's bank records which indicated that Nguyen cashed checks from SDI and DIB applicants and/or recipients with physician certifications from David. Nguyen's bank records from January 2012 to February 2018 reflected cash deposits or miscellaneous counter deposits adding up to $598,000, which accounted for 68% of her total bank deposits of $883,000, with nearly 200 instances of cash deposits averaging over $3,500 per month.

On January 29, 2019, a grand jury returned an indictment charging Nguyen and David with one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and one count of mail fraud in violation of 18 U.S.C. § 1341. On January 31, 2019, Magistrate Judge Thomas Hixson issued a search warrant pursuant to the application of FBI Special Agent James Kang for a warrant to search Nguyen's home and David's office. David now moves to suppress the evidence listed in Attachment B to the search warrant, except for the financial records of co-defendant Nguyen, identified as Item 4. Dkt. no. 50. David also moves for a *Franks* hearing based on allegedly material misrepresentations in the probable cause affidavit. Dkt. no. 51. In his third motion, David seeks disclosure of CHS1's identity. Dkt. no. 49. The government opposes David's motions, which are submitted on the papers.

**II.    DISCUSSION**

    **A.    Motion to Suppress**

David moves to suppress evidence seized from Nguyen's residence, except for

Nguyen's financial records, pursuant to the January 31, 2019, search warrant.

### 1. Fourth Amendment Standing

At the outset, the government asserts that David lacks standing to raise a Fourth Amendment challenge to the search of co-defendant Nguyen's home on the ground that David has not demonstrated a reasonable expectation of privacy in Nguyen's home to challenge the seizure of his records from her residence, citing, *inter alia*, *Byrd v. United States*, 138 S. Ct. 1518, 1526–27 (2018). Dkt. no. 54 (Opp. to Mot. Suppress) at 3–5. In *Byrd,* the Court held that the mere fact that a driver in lawful possession/control of a rental car is not listed on the rental agreement does not defeat an otherwise reasonable expectation of privacy, and remanded for further consideration of the defendant's Fourth Amendment challenge to a warrantless search.

David asserts standing to challenge the seizure of his personal and business papers under the express language of the Fourth Amendment which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The government contends that Fourth Amendment standing is limited to the reasonable-expectation-of-privacy test, and that property interests alone are not sufficient to confer Fourth Amendment standing under *Byrd*, where the Court stated, "'Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest.' Still, 'property concepts' are instructive in 'determining the presence or absence of the privacy interests protected by that Amendment.'" *Byrd,* 138 S. Ct. at 1526–27 (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)). *See* Opp. to Mot. Suppress at 4. The government misstates the holding of *Byrd,* which declined to reach the defendant's common-law property interest argument in the first instance and did not hold that the *Katz* test supplants long-standing, traditional Fourth Amendment protections for property rights. *See Byrd*, 138 S. Ct. 1518, 1526–27 ("more recent Fourth Amendment cases have clarified that the test most often associated with legitimate expectations of privacy, which was derived from the second Justice

Harlan's concurrence in *Katz v. United States*, 389 U.S. 347 (1967), supplements, rather than displaces, 'the traditional property-based understanding of the Fourth Amendment.'") (quoting *Florida v. Jardines*, 569 U.S. 1, 11 (2013)).  *See also United States v. Jones*, 565 U.S. 400, 409 (2012) ("the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test").

      The government does not dispute that David's business records were among the papers seized from Nguyen's home.  Defense counsel has provided a declaration in support of his reply brief stating that David's patient files were among the 16 boxes of evidence seized from Nguyen's address.  Dkt. no. 58-1.  For purposes of this motion, the court recognizes that David, a psychiatrist, has a possessory interest as well as a reasonable expectation of privacy in his patient files, which may contain confidential psychiatrist-patient communications.  David has not, however, established a property right or privacy interest in other papers that were seized from Nguyen's home pursuant to the search warrant, such as SSA disability insurance claim documents of non-party SSA applicants (Item 1) and EDD disability insurance claim documents of non-party EDD applicants (Item 2).  Nor has he established that he had joint control and supervision over Nguyen's home to assert standing to challenge the search and seizure of all evidence from her home.  *See* Reply ISO Mot. Suppress at 4 n.1 (citing *United States v. Johns,* 851 F.2d 1131, 1136 (9th Cir. 1988) and conceding abrogation of Ninth Circuit authority recognizing coconspirator standing by *United States v. Padilla,* 508 U.S. 77, 78 (1993)).  David's Fourth Amendment standing to bring a motion to suppress is therefore limited to challenging the seizure of his own business records, including patient files, from Nguyen's home.

      **2.**    **Legal Standard**

      The sworn affidavit in support of a search warrant must establish probable cause.  Fed. R. Crim. P. 41(d)(1).  The test to be applied is whether, using common sense and considering the totality of the circumstances, a magistrate judge can reasonably conclude that there is a "fair probability" that contraband or evidence of a crime will be found in a

1   particular place.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "For a finding of probable
2   cause to satisfy this nexus requirement, there must be a fair probability both that a crime
3   has been committed and that evidence of its commission will be found in the location to
4   be searched."  *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012)
5   (citations omitted).  "[A] magistrate judge must look to the totality of the circumstances to
6   determine whether the supporting affidavit establishes probable cause."  *United States v.*
7   *Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2003).  The issuing judge's probable cause finding
8   is entitled to "great deference."  *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012)
9   (citation and internal quotation marks omitted).

10   Ordinarily, only evidence that is obtained in violation of a warrant is suppressed.
11   *United States v. Tamura,* 694 F.2d 591, 597 (9th Cir. 1982).  "However, in cases where
12   there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress
13   all of the evidence, including evidence that was not tainted by the violation."  *United*
14   *States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992) (quoting *United States v. Medlin,* 842
15   F.2d 1194, 1199 (10th Cir. 1988)).  "This extraordinary remedy should be used only when
16   the violations of the warrant's requirements are so extreme that the search is essentially
17   transformed into an impermissible general search."  *Id.*

18   **3.     Analysis**

19   David contends that the evidence presented in Special Agent Kang's affidavit was
20   not sufficient to establish probable cause to support issuance of a search warrant,
21   particularly because it asserted only bare conclusory statements suggesting that
22   evidence of a crime by David would be found.  David suggests that any evidence
23   implicating David in disability benefits fraud was limited to the two disability recipients,
24   Wayne C. and CHS2 (Jhun C.) who relied on medical evaluations by David and admitted
25   that the information was false, so that the affidavit only supported probable cause to
26   seize the records of those two disability recipients, not the records of other disability
27   applicants or recipients.  David also suggests that the statement in Special Agent Kang's
28   affidavit, which David also challenges in the *Franks* motion, that David held a meeting

7

with Nguyen and her brother at David's office on July 29, 2017, for SDI recipients lacks any evidence that the allegedly fraudulent nature of the disability claims was discussed at that meeting.

David's arguments overlook the weight of the evidence presented in Special Agent's Kang's affidavit demonstrating a fair probability that evidence of a crime would be found in Nguyen's home and establishing a nexus between Nguyen's facilitation of fraudulent disability claims and David's medical evaluations. In addition to Wayne C. and CHS2, who met directly with Nguyen at her home, two other SDI benefit recipients, Jesse R. and Brenda C., told investigators that David completed their SDI applications despite never having met either of them. These statements by interviewees established that David submitted medical certifications for disability benefits for applicants whom he never met or examined, providing strong indicia of fraudulent activity by David. Further, David was found to be a medical source on over 900 EDD SDI disability applications, some of which listed Nguyen's home as a mailing address. Surveillance and phone records also showed frequent contact between Nguyen and David, either by phone or in person, which does not itself indicate criminal activity, but confirms that they associated with each other. Similarly, the evidence of Nguyen's unexplained income and bank records does not itself prove a crime was committed, but is consistent with the evidence showing that Nguyen received payments from disability benefit recipients in exchange for helping them submit fraudulent applications. These facts go beyond a bare bones affidavit to provide an evidentiary basis for finding probable cause to support issuance of a search warrant. *See United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) ("Direct evidence linking criminal objects to a particular site is not required for the issuance of a search warrant[; a] magistrate need only determine that a fair probability exists of finding evidence[.]").

David challenges other evidence cited in the affidavit for failing to implicate him, such as Nguyen's statements to disability recipients at the July 29, 2017, meeting in David's office without acknowledging that any claims were fraudulent; the lack of proof that David had knowledge of Nguyen's discussions with applicants about obtaining

fraudulent disability benefits; and the inconsistency between CHS2's statement that he waited at David's office to obtain his SDI application paperwork and received an antidepressant prescription, without being seen or examined by David, on May 26, 2018, and CHS2's physician certification indicating that David saw him on June 2, 2018, suggesting that the affidavit fails to address the separate question whether David failed to meet CHS2 on June 2, 2018.  Though David is right to point out that these factual gaps, standing alone, do not establish whether he knew that the disability benefit applications were fraudulent, they do not disprove or call into question the weight of the evidence supporting probable cause.  Under the totality of the circumstances, the evidence presented by the affiant supports a fair probability that a crime was committed and that evidence of a crime would be found in Nguyen's home.

Because the court finds that the search warrant was supported by probable cause, it is not necessary to reach the question whether to apply the good faith exception to the exclusionary rule under *United States v. Leon,* 468 U.S. 897 (1984), or some other exception to the exclusionary rule under *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016).

Accordingly, the motion to suppress is DENIED.

**B.     Motion for *Franks* Hearing**

David contends that Special Agent Kang misrepresented CHS2's statements about the meeting with SDI recipients at David's office on July 29, 2017, thereby calling into question his truthfulness in preparing the affidavit to obtain the search.  David requests an evidentiary hearing on the validity of the affidavit pursuant to *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

**1.     Legal Standard**

There is "a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks*, 438 U.S. at 171-72.  However, in *Franks*, the Court recognized a defendant's right to challenge the veracity of certain factual statements in the affidavits supporting the warrants:

> [W]here the defendant makes a substantial preliminary showing

> that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155–56.

The Ninth Circuit has similarly held that where facts are omitted from the affidavit, "a defendant is entitled to a *Franks* hearing upon a 'substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.'" *United States v. Whitworth*, 856 F.2d 1268, 1280 (9th Cir. 1988) (quoting *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended by* 769 F.2d 1410 (1985)). A party moving for a *Franks* hearing bears the burden of proof and must make a substantial preliminary showing (1) that the affidavit contained reckless or deliberate falsities and omissions, and (2) that any omitted information is material, i.e., that an affidavit that was supplemented by the omissions would not be sufficient to support a finding a probable cause. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002); *Stanert*, 762 F.2d at 782.

### 2. Analysis

David challenges Special Agent Kang's statement that CHS2 told investigators that David personally held the meeting with Nguyen and a group of disability recipients on July 29, 2017:

> 19. During his/her second interview, CHS2 told agents that NGUYEN, her relative CHRISTOPHER NGUYEN, **and DAVID held a meeting** on July 29, 2017 with a group of the to-be-interviewed SDI recipients at DAVID's office. A review of a July 29, 2017 security camera recording from DAVID's office building confirmed that a meeting like the one described by CHS2 took place. DAVID and several of the SDI recipients interviewed by the FBI/SSA-OIG on August 2, 2017 are on the surveillance recording.
>
> 20. According to CHS2, during the July 29, 2017 meeting, NGUYEN told the SDI recipients what to say during their August 2, 2017 interviews. NGUYEN told interviewees not to mention her and to say that DAVID worked alone.

SW Affidavit ¶ 19 (emphasis added). Having identified CHS2 as Jhun C., David refers to

the FBI reports of his interviews and asserts that Jhun C. never told the government that David held the meeting along with Nguyen and her brother Christopher Nguyen. Dkt. 52 (Suppl. Mem. ISO *Franks* Mot.) at 2–3 and Exs. C (FBI 302 report of first interview with Jhun C.) and D (302 report of second interview). David points out that the report of Jhun C.'s second interview, given after recanting his earlier statements in the first interview, does not contain any statement that David held the meeting or was otherwise present at the meeting. The government responds that the unsworn FBI report is a summary of Jhun C.'s interview and does not purport to be a comprehensive, verbatim account of everything he said during the interview, which the 302 report indicates was recorded. Even assuming that the affidavit was incorrect in stating that David held the meeting, the government contends that the misstatement is no more than a good faith mistake and that David fails to make a substantial showing that Special Agent Kang made an intentionally or recklessly false statement. The government, however, fails to rebut David's showing that Special Agent Kang's sworn statement that "David held a meeting" with Nguyen on July 29, 2017, is not substantiated by the FBI report of Jhun C.'s interview, either by a declaration or recording of the interview. Furthermore, David asserts that the video surveillance recording from his office on the day in question was taken in a long hallway and does not show a meeting being conducted, much less David and Nguyen holding a meeting in David's office. David represents that the security recording shows, at most, David and other people occasionally appearing in the hallway. Reply ISO *Franks* Mot. at 2.

In the absence of a rebuttal by the government, David has made a substantial preliminary showing under the first *Stanert* prong that Special Agent Kang's challenged statement contains a reckless falsity, which suggested that David was knowingly part of a scheme to coach disability claimants about what to say during their interviews with the government, and that David was part of a conspiracy to have the claimants submit fraudulent disability claims. *See* Reply ISO *Franks* Mot. at 2–3 (citing *Stanert*, 762 F.2d at 780).

11

1  However, David fails to make a substantial showing under the second *Stanert*
2  prong that "the affidavit purged of its falsities would not be sufficient to support a finding
3  of probable cause." *Stanert*, 762 F.2d at 780.  The misstatement in the search warrant
4  affidavit about David holding a meeting with the SDI recipients is not material to the
5  magistrate judge's finding of probable cause because the affidavit contained other
6  evidence that was sufficient to support a fair probability that David and Nguyen submitted
7  false documents in connection with fraudulent claims for disability benefits and that
8  evidence of a crime would be found in Nguyen's home, as discussed above with respect
9  to David's motion to suppress.  This evidence includes interviews of four disability benefit
10 recipients who stated that David submitted medical certifications for disability benefit
11 applications that included false information and/or that were submitted by David for
12 applicants whom he never met or examined; investigations finding that David was a
13 medical source on over 900 EDD SDI disability applications, some of which listed
14 Nguyen's home as a mailing address; surveillance and phone records showing frequent
15 and regular contact between Nguyen and David; and evidence of Nguyen's unexplained
16 income and bank records of checks from SDI and DIB recipients with physician
17 certifications from David.

18 Accordingly, the motion for a *Franks* hearing is DENIED.

### C.  Motion to Disclose Identity of Confidential Informant

David moves for disclosure of CHS1's identity as "relevant and helpful to the defense of an accused, or [ ] essential to a fair determination of a cause," pursuant to *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957).

#### 1.  Legal Standard

The government has a qualified privilege to withhold an informant's identity.  *See Roviaro*, 353 U.S. at 59–61.  There is no fixed rule as to disclosure of the identity of the informant; rather, the public's interest in the flow of information should be carefully balanced against the individual's right to prepare his defense.  *Id.* at 62.  To obtain disclosure of an informant, the defendant must show a need for the information.  *United*

States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2000); see also United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993); United States v. Sai Keung Wong, 886 F.2d 252, 256 (9th Cir. 1989).  Where the government opposes disclosure of the identity of an informer, this court must balance: "1) the extent to which disclosure would be relevant and helpful to the defendant's case, and 2) the government's interest in protecting the identity of the informant."  Spires, 3 F.3d at 1238.  "In doing so the court must consider 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" Id. (citing Roviaro, 353 U.S. at 62.).

In order to balance the interests of the individual and society, the court examines three factors to determine whether an informant's identity should be revealed: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure.  United States v. Gil, 58 F.3d 1414, 1421 (9th Cir. 1995) (citing United States v. Gonzalo Beltran, 915 F.2d 487, 488–89 (9th Cir. 1990) (per curiam)).  Courts generally require "disclosure where the informant was a participant in, or a witness to the crime charged."  3 WHARTON'S CRIMINAL EVIDENCE § 11:60 (15th ed. 2001).  Conversely, they "generally do not require disclosure where the informant merely introduced the police officers to the defendant, supplied information to law enforcement officers, played some other peripheral role in the crime, or where the prosecution did not rely on the informant or on information supplied by him in showing the defendants' guilt." Id.

**2.  Analysis**

David moves to disclose the identity of CHS1, who first contacted the FBI in November 2013 to report that a woman later identified as Nguyen was facilitating disability insurance applications for individuals who were not disabled.  From January 2014 to March 2015, when the FBI began a joint investigation with SSA-OIG, CHS1 continued to provide information to the FBI including information that Nguyen worked with a medical doctor later determined to be David.  David contends that knowing CHS1's

1  identity and having the opportunity to question him/her would be helpful to the defense
2  because CHS1 could having information that shows that Nguyen was operating the
3  scheme to file fraudulent disability claims on her own and that David was an innocent,
4  unknowing party who was preparing the claims based on information that Nguyen
5  provided to him.  Mot. Disclose CI at 5 (citing *United States v. Ordonez*, 737 F.2d 793,
6  808–09 (9th Cir. 1983) (requiring *in camera* hearing where court found sufficient showing
7  of need for disclosure of informant to bolster defense).  David also argues that
8  information provided by CHS1 could be relevant at sentencing when considering the
9  various enhancements for role in the offense.  Mot. Disclose CI at 5 (citing *United States*
10 *v. Ramirez-Rangel*, 103 F.3d 1501, 1508 (9th Cir. 1997) (applying *Ordonez* to require *in*
11 *camera* hearing to determine whether testimony of informant who was a percipient
12 witness would be relevant and helpful to the defense on the question of sentencing
13 entrapment), *abrogated on other grounds by Watson v. United States*, 552 U.S. 74
14 (2007).

15       The government responds that David's speculation about CHS1's identity being
16 helpful to his defense is not supported by facts showing the limited extent of CHS1's
17 knowledge or involvement.[1]  The government represents that CHS1 was introduced to
18 Nguyen by P.A.T., who had used Nguyen and David to apply for, and receive, fraudulent
19 disability benefits and suggested that CHS1 also do so.  Opp. to Mot. Disclose CI at 1.
20 The government further represents that CHS1 met Nguyen at her home and instructed
21 CHS1 to complete a disability benefit application, which would have to be completed
22 before David would approve CHS1's disability.  Nguyen also instructed CHS1 to meet
23 with David, but CHS1 reported that he/she did not meet with David and that David never
24 submitted a disability certification for CHS1.  *Id.*  During the period from January 2014 to
25 March 2015, CHS1 continued to report to the FBI that Nguyen was operating a disability

---

[1] The government provides additional factual details about CHS1 in its opposition brief without a declaration, but David does not object to the government's additional unsworn factual statements.

14

1    fraud scheme and working with David, based on information that CHS1 received from
2    P.A.T. and other unnamed individuals. *Id.*
3        The government represents that it does not intend to call CHS1 as a witness at
4    trial or to use CHS1's tips as evidence against David. Given that CHS1 has never met
5    David and that David never provided a disability certification for CHS1, the government
6    argues that CHS1's identity would not help David's defense in the face of evidence
7    showing that David provided disability certifications for other people that David never
8    treated as patients. With respect to David's contention that CHS1's identity would be
9    helpful at sentencing, the government responds that David has not identified what role
10   enhancements would be applicable, and represents that it does not anticipate seeking
11   any role enhancements at David's sentencing, noting that none were sought against
12   Nguyen in her plea agreement. The government also asserts the general public interest
13   in protecting informants' identities and the government's reliance on tips by informants to
14   investigate crime.
15       In balancing David's interest in disclosing CHS1's identity against the general
16   interest of the government and the public in protecting informant's identities, the court
17   determines that the relevant factors under *Gonzalo Beltran*, 915 F.2d at 488–89, do not
18   warrant disclosure:
19       (1) the degree of the informant's involvement in the criminal activity was not
20   significant: CHS1 did not meet with David and David did not submit a disability
21   certification for CHS1. CHS1's involvement was limited to providing a tip and supplying
22   information to the FBI, including second hand information from other individuals. *See Gil*,
23   58 F.3d at 1421 (trial court properly limited cross-examination to protect identity of
24   informant who was "a mere tipster who had no information that could form a basis of
25   either exculpatory or inculpatory information") (internal marks omitted).
26       (2) the relationship between the defendant's asserted defense and the likely
27   testimony of the informant is speculative: David contends that his need for the CHS1's
28   identity is similar to *Ordonez,* where the informant bought cocaine from a major cocaine

1  dealer 10 times over a 60-day period and knew the leaders of the criminal enterprise, as
2  well as its inner workings, hierarchy, and memberships. In *Ordonez,* the Ninth Circuit
3  reversed the trial court's denial of a motion to disclose the informant's identity without
4  conducting an *in camera* hearing or articulating the balance of relevant factors where the
5  defense showed that the informant would have been called as a witness to support the
6  defense theory that one defendant was mistakenly identified as the major cocaine dealer
7  who sold narcotics to the informant and that the co-defendant's role in the organization
8  was menial and not that of a supervisor, manager, or organizer as alleged in the
9  continuing criminal enterprise charge. *Ordonez*, 737 F.2d at 807–08. David asserts that
10 under *Ordonez,* he is entitled to cross-examine CHS1 to provide information that would
11 show that Nguyen operated alone in filing fraudulent disability benefit applications.
12 However, the government has demonstrated that CHS1 could not provide any useful
13 testimony to rebut the evidence that David (i) diagnosed other people with mental
14 illnesses without seeing or meeting them as patients; (ii) prescribed psychiatric
15 medications for those people; and (iii) submitted false medical certifications under penalty
16 of perjury stating that he "treated the patient" and that those people could not work
17 because of their mental illnesses. As CHS1 only interacted with Nguyen and never met
18 David, disclosure of CHS1's identity would likely result in information cumulative of
19 statements by the interviewees identified by the government who similarly met only with
20 Nguyen and never met David, namely, Jesse R., Wayne C. and CHS2. Unlike the
21 informant in *Ordonez* who knew the leaders of the criminal enterprise, including the
22 cocaine dealer who was allegedly misidentified as the defendant who sought disclosure
23 of the informant's identity, CHS1's limited role in supplying information to the FBI does
24 not suggest that disclosing CHS1's identity would be relevant or helpful to the defense or
25 would be relevant at sentencing. *See United States v. Buffington*, 815 F.2d 1292, 1299
26 (9th Cir. 1987) ("The mere suspicion that information will prove helpful is insufficient to
27 require disclosure.").
28     (3) the government's interest in nondisclosure is well-recognized: David argues

that the government no longer has an interest in protecting CHS1's identity because the investigation is over and the government has disclosed its other informant, CHS2. The government asserts the general public interest "in protecting the flow of information" recognized in *Roviaro*: "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro*, 353 U.S. at 59. Here, the government does not intend to call CHS1 as a witness, or otherwise rely on evidence provided by CHS1 at trial, and the government is entitled assert its privilege to withhold the identity of an informant, to be weighed "against the individual's right to prepare his defense." *Id.* at 62.

On balance, the general public interest in protecting an informant's identity outweighs the lack of any demonstrated relevance or usefulness to David's defense in disclosing CHS1's identity. The motion to disclose the confidential informant's identity is therefore DENIED.

### III.   CONCLUSION

For the reasons set forth above, David's motion to suppress, motion for *Franks* hearing, and motion to disclose the identity of a confidential informant are DENIED.

**IT IS SO ORDERED.**

Dated: May 26, 2020

                                 /s/ *Phyllis J. Hamilton*
                                 PHYLLIS J. HAMILTON
                                 United States District Judge